**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:17-cr-267-SI |
| v. | |
| **GARY NEIL CRAMER**, and **THERON J. MARRS**, | |
| Defendants. | |
| | Case No. 3:17-cr-271-SI |
| **UNITED STATES OF AMERICA**, | |
| v. | |
| **THERON J. MARRS**, | |
| Defendant. | |

**OPINION AND ORDER ON PENDING MOTIONS
TO SUPPRESS OR EXCLUDE EVIDENCE**

**Michael H. Simon, District Judge.**

Gary Neil Cramer ("Cramer") and Theron J. Marrs ("Marrs") are Defendants in *United States v. Cramer and Marrs*, Case No. 3:17-cr-267-SI ("Case '267"). Marrs also is a Defendant (indeed, the only Defendant) in *United States v. Marrs*, Case No. 3:17-cr-271-SI ("Case '271"). With the express consent of all parties, and pursuant to Rule 13 of the Federal Rules of Criminal

Procedure, both cases will be tried together, as though brought in a single indictment. ECF 129.[1] The Court has scheduled trial to commence on April 23, 2019.[2]

In Case '267, Cramer and Marrs have filed the following motions, among others: (1) Motion to Suppress Evidence and Motion to Dismiss for Due Process Violations (Search Warrant for Eugene Residence) (ECF 136); (2) Motion to Suppress Evidence (Arrest on December 8, 2017) (ECF 141); (3) Motion to Suppress Evidence (Search Warrant December 22, 2017) (ECF 142); (4) Motion to Suppress Evidence and Motion to Dismiss for Due Process Violations (Search Warrant for Electronic Mail December 2014) (ECF 143); and (5) Motion to Exclude Illegally Gathered Evidence (ECF 153).[3] After reviewing the parties' written submissions, the Court does not believe that oral argument is likely to be helpful or that an evidentiary hearing is needed. For the reasons that follow, these motions are denied.

## BACKGROUND

### A. The Indictments

On July 18, 2017, a grand jury returned a four-count indictment against Cramer and Marrs in Case '267. Count 1 charges both Cramer and Marrs with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Count 2 charges only Cramer with evasion of payment of taxes, in violation of 26 U.S.C. § 7201. Count 3 charges only Cramer with filing a false federal tax return in 2014 for calendar year 2013, in violation of 26 U.S.C. § 7206(1).

---

[1] Unless otherwise stated, all references to electronic case file ("ECF") docket numbers are based on Case '267.

[2] Although both Cramer and Marrs have expressly agreed that both cases may be tried together, they have not waived their respective rights to a speedy trial.

[3] In Case '271, Marrs filed a virtually identical motion. *See* ECF 87 in Case '271.

Count 4 charges only Marrs with aiding and assisting in the filing of a false federal tax return in 2014 for calendar year 2013, in violation of 26 U.S.C. § 7206(2). ECF 1.

Also on July 18, 2017, a grand jury returned a seven-count indictment against only Marrs in Case '271. Count 1 charges Marrs with evasion of payment of taxes, in violation of 26 U.S.C. § 7201. Count 2 charges Marrs with filing a false federal tax return in 2013 for calendar year 2005, in violation of 26 U.S.C. § 7206(1). Count 3 charges Marrs with filing a false federal tax return in 2013 for calendar year 2006, in violation of 26 U.S.C. § 7206(1). Count 4 charges Marrs with filing a false federal tax return in 2013 for calendar year 2007, in violation of 26 U.S.C. § 7206(1). Count 5 charges Marrs with filing a false federal tax return in 2013 for calendar year 2009, in violation of 26 U.S.C. § 7206(1). Count 6 charges Marrs with filing a false federal tax return in 2013 for calendar year 2010, in violation of 26 U.S.C. § 7206(1). Count 7 charges Marrs with obstructing or impeding the due administration of the tax laws, in violation of 26 U.S.C. § 7212(a). ECF 1 in Case '271. On April 18, 2018, a grand jury returned a superseding indictment against Marrs in Case '271, charging the same violations alleged in the original indictment, but with a correction in the text of Count 7 to conform to a change in the case law. ECF 51 in Case '271.

**B. Procedural History Regarding Defendant Marrs**

On July 20, 2017, Marrs was arrested pursuant to a warrant, had his initial appearance, arraignment, and detention hearing on both indictments, and was released on conditions. The Court scheduled trial for September 26, 2017. Marrs filed motions to continue both trials, which the Court granted. On November 20, 2017, Marrs filed motions to declare both cases complex (ECF 32) and motions to dismiss both cases (ECF 33). On December 14, 2017, the Court declared both cases complex, set both cases for trial on June 4, 2018 (with the order of which

trial would proceed first to be determined at a later date), and found the continuances entered in each case constituted excludable delay pursuant to 18 U.S.C. § 3161(h)(7)(A). ECF 38.

On March 29, 2018, Marrs filed a motion to sever his trial in Case '267 from the trial of Cramer in that case. ECF 68. (Cramer filed a similar motion the day before. ECF 67.) On April 16, 2018, Marrs fired his counsel in both cases, Chief Deputy Federal Defender Stephen Sady. ECF 76. The Court appointed Paul Hood as Marrs's new counsel in both cases. *Id*. As previously noted, a grand jury issued a superseding indictment in Case '271 on April 18, 2018. ECF 51 in Case '271. Marrs was arraigned on the superseding indictment on April 25, 2018. ECF 57 in Case '271. On May 24, 2018, at Cramer's unopposed request, the Court rescheduled the trial date in Case '267 from June 4 to June 14, 2018. ECF 82. (The Court also reset the trial date in Case '271 to June 14. ECF 58 in Case '271.)

On June 11, 2018, the Court denied Marrs's motion to dismiss Case '267 and denied in part and granted in part his motion to dismiss Case '271. ECF 86. On June 14, 2018, the Court held a status and scheduling conference, rather than a trial, in the two cases. ECF 91. At that status conference, the Court set a schedule on the pending motions to sever in Case '267. *Id*. The Court also reset the trial of Case '267 and the trial of Case '271 for April 23, 2019 (again, with the order of which case would be tried first to be determined later). *Id*.

On July 6, 2018, Marrs, joined by Cramer, filed a motion requesting to withdraw their previously-filed motions to sever. ECF 95. The Court promptly granted Defendants' requests to withdraw their motions to sever. ECF 96. On August 8, 2018, both Cramer and Marrs filed a joint motion to allow hybrid counsel. ECF 97. On October 19, 2018, after conducting a hearing required under *Faretta v. California*, 422 U.S. 806 (1975), the Court granted in part both Defendants' motions for hybrid counsel. ECF 109; ECF 110. Also on October 19, 2018, *both*

*Cramer and Marrs requested additional time of almost three months to file substantive pretrial motions*, which the Court allowed. ECF 108.

On January 9, 2019, the Court held a status and scheduling conference in both cases. After the government, on the one hand, and both Defendants, on the other, disagreed over whether Case '267 should be tried before or after Case '271, the Court asked all parties whether both cases should be tried together on April 23, 2019, as though brought in a single indictment. *See* Fed. R. Crim. P. 13. Without waiving their objections based on speedy trial issues, Marrs and Cramer both expressly consented to trying Case '267 and Case '271 jointly on April 23, 2019, as did the government. The Court agreed and scheduled both cases to be tried together in a 15-day jury trial commencing on April 23, 2019. The Court also set final deadlines for filing and responding to substantive pretrial motions. ECF 129.

## C.  Procedural History Regarding Defendant Cramer

Defendant Cramer was a fugitive for five months after the grand jury returned the indictment in Case '267, despite Cramer being aware of the charges and, as discussed below, even filing *pro se* several documents in that case shortly thereafter in which Cramer challenged the case against him. On December 8, 2017, local police in South Bend, Washington, arrested Cramer pursuant to a federal warrant. On December 11, 2017, Cramer had an initial appearance before U.S. Magistrate Judge Theresa L. Fricke, in the U.S. District Court for the Western District of Washington (Tacoma), pursuant to Fed. R. Crim. P. 5(c)(3). Judge Fricke appointed counsel for Cramer, had the prosecutor read the charges and penalties to Cramer, and set an identity and detention hearing. On December 14, 2017, Judge Fricke determined that Cramer was the person charged in the indictment, detained him, and ordered that he be transferred to the District of Oregon. As Cramer correctly asserts in his Motion, at neither hearing did Judge Fricke ask Cramer to plead to the charges.

On January 19, 2018, Cramer made an initial appearance in the District of Oregon (Eugene) before U.S. Magistrate Judge Thomas M. Coffin. Judge Coffin appointed counsel for Cramer, briefly advised Cramer of the charges against him, and ordered that Cramer be detained to ensure his appearance in federal court in Portland.

Cramer appeared before U.S. Magistrate Judge Stacie F. Beckerman in Portland on January 29, 2018, for a detention hearing and status conference. Judge Beckerman ordered that Cramer continue to be detained. On March 8, 2018, U.S. Magistrate Judge John V. Acosta conducted a review of Cramer's detention and continued to detain him as a flight risk. On March 20, 2018, the undersigned district judge held a status and scheduling conference in both cases, explained that the Court had previously designated both cases as complex, set the trial date in Case '267 for June 4, 2018, and found excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D), (6), and (7)(A). ECF 64.

As discussed above, on March 28, 2018, Cramer filed a motion in Case '267 to sever his trial from the trial of Marrs in that case. ECF 67. (As also previously noted, Marrs filed a similar motion on March 29, 2018. ECF 68.) At Cramer's unopposed request, the Court rescheduled trial from June 4 to June 14, 2018. ECF 82. On June 14, 2018, with the motions to sever still pending, the Court ordered Cramer's release on conditions and reset the trial of both cases to April 23, 2019. As also discussed above, on July 6, 2018, both Marrs and Cramer filed requests to withdraw their previously-filed motions to sever, which the Court promptly granted. After July 6, 2018, the rest of the proceedings regarding Cramer are as described above regarding Marrs.

## STANDARDS

The Warrant Clause of the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The description in the warrant must be specific

enough to guide the executing officer as to which items to search or seize.[4] *See Marron v. United States*, 275 U.S. 192, 196 (1927). The "manifest purpose of this particularity requirement" is to prevent "wide-ranging exploratory searches" by "limiting the authorization to search to the specific areas and things for which there is probable cause to search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

The Ninth Circuit has developed the following three-factor test to determine whether a warrant is sufficiently precise:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Vasquez*, 654 F.3d 880, 884 (9th Cir. 2011) (quoting *United States v. Stubbs,* 873 F.2d 210, 211 (9th Cir. 1989)); *see also United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (describing similar factors). The level of specificity required depends on what is reasonable given "the circumstances of the case and the type of items involved." *Hill*, 459 F.3d at 973 (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)); *see also id.* at 974 ("As always under the Fourth Amendment, the standard is reasonableness.").

Warrant specificity has two aspects: particularity and breadth. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991). The Fourth Amendment requires that a search warrant "particularly describe the place to be searched and the persons or things to be seized," and "[t]he warrant must make clear to the executing officer exactly what it

---

[4] A police officer may, however, "seize evidence in plain view without a warrant," as long as "the initial intrusion that brings the police within plain view of such an article" is legal. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

is that he or she is authorized to search for and seize." *Id.* at 857. Furthermore, "[t]he description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Id.* Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based. *Id.* The concept of breadth is "the requirement that there be probable cause to seize the particular thing named in the warrant." *Id.*

In order to evaluate particularity and breadth, a court must determine "the threshold question of whether the warrant incorporated . . . [the] affidavit" of the agent. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009). "If [the affidavit] was incorporated, then we evaluate the affidavit and the warrant as a whole, allowing the affidavit to cure any deficiencies in the naked warrant." *Id.* An affidavit is incorporated "only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." *Id.* An affidavit is expressly incorporated into a warrant when the warrant uses suitable words of reference. *Id.* There are "no magic words of incorporation." *United States v. Vesikuru*, 314 F.3d 1116, 1121 (9th Cir. 2002). The Ninth Circuit held in *Vesikuru* that the phrase, "*Upon the sworn complaint made before me* there is probable cause to believe that the [given] crime . . . has been committed," were words that denoted a reference suitable for incorporating the affidavit into the warrant. *Id.* at 1120 (emphasis in original).

When digital evidence is concerned, the Ninth Circuit has often upheld broad warrants to seize all storage media for later examination. *See, e.g.*, *United States v. Hay*, 231 F.3d 630, 636-37 (9th Cir. 2000) (upholding a warrant that "authorized the government to search and seize Hay's entire computer" because the government "had no way of knowing where the [illegal]

images were stored"); *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (allowing seizure of the defendant's "entire computer system"); *but see United States v. Kow,* 58 F.3d 423, 427 (9th Cir. 1995) (invalidating a warrant that "authorized the seizure of virtually every document and computer file" at the defendant's business). Such warrants must be supported by affidavits "giving a reasonable explanation . . . as to why a wholesale seizure is necessary," enabling the magistrate to "intelligently . . . exercise the court's oversight function." *Hill*, 459 F.3d at 976; *see also Lacy*, 119 F.3d at 746 (distinguishing *Kow* because "the affidavit [in *Lacy*] established probable cause to believe Lacy's entire computer system was likely to evidence criminal activity" (quotation marks omitted)).

The Ninth Circuit has also declined to require warrants for digital storage media to specify a search protocol for the government to follow. *See, e.g.*, *United States v. Giberson*, 527 F.3d 882, 889-90 (rejecting the argument that "a search of [the defendant's] computer files should have been limited to files likely to be associated with those identified in the search warrant"); *Hill*, 459 F.3d at 978 ("[W]e look favorably upon the inclusion of a search protocol; but its absence is not fatal."); *United States v. Adjani*, 452 F.3d 1140, 1150 (9th Cir. 2006) (similar). Such restrictions are unnecessary because even without them, "the officer is always limited by the longstanding principle that a duly issued warrant . . . may not be used to engage in a general, exploratory search." *Hill*, 459 F.3d at 978 (quotation marks omitted).

When a warrant violates the Fourth Amendment, the exclusionary rule applies, which prohibits the use at trial of "evidence seized during an unlawful search." *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). "[I]ndirect products" of an illegal search, such as "statements or physical evidence subsequently obtained in part as a result of the search," are also barred "if they bear a sufficiently close relationship to the underlying illegality." *United States v.*

*Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011) (quotation marks omitted). When only portions of a warrant are insufficiently specific, however, the Ninth Circuit has "endorsed a doctrine of severance, which allows a court to strike from a warrant those portions that are invalid and preserve those portions that satisfy the [f]ourth [a]mendment." *SDI Future Health, Inc.*, 568 F.3d at 707 (quotation marks omitted) (alterations in original). Severance is not appropriate, however, "when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search." *Id.* at 707 (quotation marks omitted).

## DISCUSSION

As previously noted, on October 19, 2018, the Court granted in part Cramer and Marrs's separate requests to proceed with hybrid counsel. Among other things, the Court allowed Cramer and Marrs to decide what motions to present, even if their counsel recommended otherwise. The Court, however, required that any motion by a Defendant be filed only by an attorney for that Defendant. Defendants' motions do not reflect the lawyerly craftsmanship, precision, and legal analysis that the Court has come to expect from the attorneys representing Cramer and Marrs. The Court, nevertheless, will address and resolve the material points raised in Defendants' motions.

**A. Motion to Suppress Evidence and Motion to Dismiss for Due Process Violations (Search Warrant for Eugene Residence) (ECF 136)**

Defendant Cramer moves the Court for an order suppressing the evidence seized from his residence at 2841 City View Street, Eugene, Oregon. Cramer contends that there was no probable cause to search the residence, that the warrant allowing the search is overbroad and lacks particularity, that the information in the affidavit supporting the warrant was stale, and that the language in the affidavit was vague and conclusory. He also contends that his due process

rights were violated by the delay of the Internal Revenue Service ("IRS") in the investigation and that as a result the indictment should be dismissed.

### 1. Probable Cause

On March 13, 2015, former IRS Special Agent ("SA") Slafsky applied for and received a search warrant for defendant Cramer's residence at 2841 City View Street, Eugene, Oregon. ECF 136-3. The warrant incorporated SA Slafsky's affidavit in support of the application for the warrant. *See Vesikuru*, 314 F.3d at 1121. The affidavit recounts SA Slafsky's training and experience as an agent and details the specific criminal statues applicable to the search of Cramer's residence. SA Slafsky's affidavit discussed Cramer's businesses and his contacts with Marrs. The affidavit also described that Cramer had been audited and assessed substantial tax for 2001. The affidavit also contained SA Slafsky's determination that Cramer had filed false tax returns for 2011 through 2013.

The affidavit also indicated that Cramer purchased the residence at 2841 City View Street, Eugene, Oregon, on August 14, 2014, and that he was receiving mail at that address from financial institutions and multi-level marketing businesses. SA Slafsky's trash collection from outside the residence eight days before obtaining the warrant also revealed that Cramer received bank account information and multi-level marketing documents at this address. In his affidavit, SA Slafsky noted his belief that Cramer extensively used computers or digital devices to conduct business. To establish probable cause to search computers and electronic devices, SA Slafsky reviewed the following: an email indicating that Cramer's girlfriend was scheduling Internet service soon after they both moved to the residence; Cramer's other emails; multiple web-based email accounts Cramer used to promote his multi-level marketing businesses; and Cramer's videos on YouTube.

The records and information sought by the warrant were limited to the period January 1, 2001 through the date of the execution of the warrant, and pertain only to Gary N. Cramer, Theron J. Marrs, Foundation Management Services, and GC Management (Exhibit 2A, Attachment B). The items to be seized and searched include specific categories such as financial and bank records; cash and precious metals; records of credit cards and ATM transactions; accounting records; ledgers, financial statements, profit and loss statements, income statements and balance sheets; records related to the formulation of a business; tax forms and tax returns; documents showing residency and ownership of the place searched; evidence of debts or loans; records, passwords and keys to safe deposit boxes; and computer storage media, software and hardware, passwords, and evidence of computer ownership or control. The affidavit and the warrant set forth a procedure for searching the seized electronic and digital evidence, requiring that the government conduct an initial examination of the computer and storage media within 120 days of the execution of the warrant. The government had 180 days from the date of execution of the warrant to complete a full review of the computer evidence.

SA Slafsky's detailed affidavit more than adequately sets out sufficient probable cause for finding evidence of violations of 26 U.S.C. § 7201 (tax evasion); 26 U.S.C. § 7206(1) (filing false tax returns); 26 U.S.C. § 7212 (interference with administration of tax laws); and 18 U.S.C. § 371 (conspiracy to defraud the United States) located at Gary Cramer's residence at 2841 City View Street, Eugene, Oregon. Based on the information in the affidavit, there was a fair probability that evidence of these crimes would be found in Cramer's residence. *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007).

### 2. Overbreadth and Particularity

Cramer argues that the warrant is overbroad because agents seized property records regarding the purchase of the residence when they had already obtained these records from the

title company. The Court finds that seizure of these items was reasonable because they are potentially evidence that Cramer had dominion and control over the searched premises. In addition, these documents are evidence that Cramer was concealing the true ownership of a valuable asset from the IRS.

Cramer also asserts that Attachment B, Section 1(M) and paragraph 2 allowed agents to seize everything in his residence. The Court finds that the search warrant affidavit outlines in detail Cramer's use of computers and email to commit the listed offenses. Attachment B limited the search to evidence of the enumerated crimes, covering only the period of January 1, 2001 through the date of the execution of the warrant. The search was further limited to items relating to specific people and entities, *i.e.* Gary N. Cramer, Theron J. Marrs, and Cramer's two businesses: Foundation Management Services and GC Management. Attachment B listed the specific categories of records for which the agents were permitted to search.

The warrant was neither overbroad nor lacking in particularity with respect to the search of Cramer's residence. The warrant gave agents guidelines regarding the evidence they could search for. Likewise, the scope of the warrant was limited by the probable cause on which the warrant is based. *See In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991) (citations omitted).

### 3. Staleness

Cramer asserts that the affidavit is stale because SA Slafsky included information about the check that Cramer sent to the IRS in May 2007, which was a time when Cramer lived in Battle Ground, Washington. Cramer argues that SA Slafsky's reference to Cramer's businesses having once been registered in Battle Ground, Washington rendered the affidavit stale because there was "nothing specific linking the behavior alleged to the home in Eugene."

"Information underlying a warrant is not stale if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (quotation marks and citation omitted.) SA Slafsky included information about his investigation that spanned several years in his statement of probable cause. The check submitted to the IRS in May 2007 and the mention of Battle Ground, Washington, were just was two pieces of information related to probable cause for the search. The 29-page affidavit sets forth in detail other aspects of the investigation, including Cramer's contact with codefendant Marrs in 2013 and 2014; their discussions about "zero income" tax returns and documents that Cramer should send to the IRS; and Cramer's filing of false "zero income" income tax returns in April 2014. Cramer's purchase of the Eugene residence in August 2014 and his alleged use of the Internet and emails to conduct business there as recently as December 2014 made clear that information contained in the Affidavit was current, and it reflected an ongoing pattern of alleged criminal activity that was taking place at the Eugene residence. There was sufficient basis to believe that evidence of the violations set forth in the affidavit would be found at the Eugene residence when the search warrant was executed in March 2015.

### 4. Vague and Conclusory Language

Cramer argues that the affidavit contains vague and conclusory language, namely SA Slafsky's use of the word "often" when, for example, SA Slafsky stated that based on his training and experience, "the filing of false returns, and obstruction of the administration of the income tax law often maintain records for long periods of time." ECF 136. "[The] opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation under the *Gates* totality of the circumstances approach." *United States v.*

*Michaelian*, 803 F.2d 1042, 1045 (9th Cir. 1986). The Court finds that these statements are neither vague nor conclusory.

**5. Due Process Claim**

Cramer also argues that his right to due process was violated by an alleged seven-year delay by IRS Collection officers from 2007 to 2013, and that the Court should therefore dismiss the indictment. Cramer bases this claim of delay on an Inventory Control System ("ICS") History Transcript, a document that Cramer received in discovery. ECF 136-2. The document was not seized as part of the search but was part of the IRS's files because it relates to the collection of Cramer's tax liability by IRS civil personnel. Therefore, the document does not directly relate to the criminal investigation.

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay." *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). Courts in the Ninth Circuit evaluate pre-indictment delay under a two-pronged test. First, the defendant "must prove that [he] suffered actual, non-speculative prejudice from the delay." *Id.* at 1353. Second, the defendant must demonstrate that the delay, "when balanced against the prosecution's reasons for it, offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* at 1353–54 (citations and quotation marks omitted). "A showing of actual prejudice is required before the second prong will be considered." *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998). To satisfy his burden under the first prong, defendant must produce "proof that demonstrates exactly how the loss of evidence or witnesses" due to pre-indictment delay "was prejudicial." *United States v. Barken*, 412 F.3d 1131, 1135 (9th Cir. 2005). This burden is "heavy and is rarely met." *Id.*; *see also Sherlock*, 962 F.2d at 1354 ("[W]e frequently find actual prejudice lacking.").

Cramer offers no proof that the actions of IRS civil personnel prejudiced the criminal case against him. Instead, Cramer asserts that the delay by IRS civil personnel let "facts become obscured with the passage of time while they did not promptly investigate the suspected activity." ECF 136. Cramer has failed to establish the first prong of the test for pre-indictment delay. Accordingly, the Court denies Cramer's motion to dismiss the indictment for Due Process violations.

**B. Motion to Suppress Evidence (Arrest on December 8, 2017) (ECF 141)**

Defendant Cramer argues that all evidence seized at the time of his arrest on December 8, 2017 arrest should be suppressed because the arrest warrant was never personally shown to Cramer and because law enforcement did not have a physical copy of the arrest warrant and therefore could not have believed "that the affidavit in support of the warrant established probable cause." ECF 141. Cramer cites no legal authority in support of his position. The Sixth Circuit has held that there is no requirement that the arresting officer possess a physical copy of the warrant or show the defendant a copy of the warrant at the time of arrest. *See United States v. Buckner*, 717 F.2d 297, 301 (6th Cir. 1983) ("The fact that the officers did not have the arrest warrant in hand is of no consequence."). Cramer offers no legal authority to indicate that the rule is different in the Ninth Circuit. Cramer's motion is denied.

**C. Motion to Suppress Evidence (Search Warrant December 22, 2017) (ECF 142)**

Defendant Cramer was arrested on December 8, 2017, pursuant to a federal arrest warrant. Pacific County Sheriff Deputies searched Cramer incident to his arrest for weapons and contraband. Cramer had in his possession an Apple MacBook Pro laptop computer, an LG Cricket cell phone, an LG flip cell phone, a thumb drive, a Coolpad cell phone, and a backpack containing documents and other items. Cramer's items were transported to the South Bend Police Department and entered into the evidence system for safekeeping.

On December 14, 2017, SA Kelley took custody of these items from local police and stored them in the IRS-CI evidence room at 1220 SW Third Avenue, Portland, Oregon. On December 22, 2017, SA Kelley applied for and received a warrant to search the items. On January 3, 2018, IRS Computer Specialist Diana J. Erwin began the review of the electronic devices pursuant to the warrant. ECF 170-1. Cramer argues that the search warrant for the items in his possession at his arrest lacks probable cause because the information in the affidavit is stale and the language is conclusory, that the warrant is overbroad and lacks particularity, and that the search did not occur within the 120-day period set forth in the warrant.

### 1. Overbreadth and Particularity

SA Erwin's declaration states that she read the search warrant and SA Kelley's affidavit before conducting the search of the computer and electronic devices and that she knew what she was permitted to search for. The affidavit was available to SA Erwin during the course of her search. Because both prongs of incorporation have been satisfied, the Court evaluates the warrant and the affidavit as a whole. *SDI Future Health*, 568 F.3d at 699.

For a search to be reasonable, the warrant must be specific. Specificity has two aspects, breadth and particularity. "Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991) (citation omitted). SA Kelley's affidavit set forth probable cause that evidence related to violations of 26 U.S.C. § 7201 (tax evasion); 18 U.S.C. § 371 (conspiracy to defraud the United States); and 18 U.S.C. § 1071 (harboring a fugitive from arrest) would be found on the devices and documents taken from Cramer at the time of his arrest, and located in the evidence locker at the IRS-CI office. The affidavit describes in detail the investigation leading up to the indictment, the efforts SA Kelley took to persuade Cramer to turn himself in after the indictment, the efforts SA Kelley and other law enforcement

officials engaged in to find Cramer, the communications between Cramer and his girlfriend Melba Spotswood who had contact with Cramer while he was a fugitive, Cramer's use of trusts and nominees to conceal the proceeds from the sale of his home while he was a fugitive, the post-indictment communications between Cramer and codefendant Marrs involving business activities they were conducting; and Cramer's use of the Internet and cell phones to conduct business, communicate with associates, and conceal income and assets from the IRS. The scope of the warrant was limited to the probable cause that SA Kelley set forth in his affidavit for the crimes of Tax Evasion, (26 U.S.C. § 7201), Conspiracy to Defraud the United States (18 U.S.C. § 371); and Harboring a Fugitive from Arrest (18 U.S.C. § 1071).

The particularity limitation requires warrants to clearly state the items to be seized and the locations to be searched. *United States v. Kahre*, 737 F.3d 554, 566 (9th Cir. 2013). "The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *Id.* The only categories of evidence that SA Erwin was permitted to search for and seize were specifically enumerated in Attachment B. Those categories include financial and bank records; records of income and expenditures; records relating to the purchase, ownership and sale of assets; accounting records; profit and loss records; tax forms and copies of tax returns; records related to the formation and operation of business entities; client records; records of loans and expenses; information about the disposition of proceeds of the sale of Cramer's residence at 2841 City View Street, Eugene, Oregon; records showing ownership, or control of the devices described in Attachment A.

Regarding the search of Cramer's computer, Paragraph 1 and its subparts refer to specific records and information for which agents may search. Paragraph 4 specifically permits agents to search for and seize applicable records and information in whatever form and by whatever means

they were created or stored. Agents were not limited to the search and seizure of paper

documents. The warrant specifically permitted them to search and seize records and information

that was either created or stored on a computer or electronic storage device. The search warrant

provided the requisite specificity to limit the agents' discretion. *See United States v. Smith*, 424

F.3d 992, 1004–06 (9th Cir. 2005).

### 2. Staleness

Cramer asserts that SA Kelley used information in the affidavit that was ten years old and

as a result the entire affidavit is stale. "Information underlying a warrant is not stale 'if there is

sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to

be seized are still on the premises." *Schesso*, 730 F.3d at 1047 (quoting *Lacy*, 119 F.3d

at 745-46.) "The mere passage of substantial amounts of time is not controlling in a question of

staleness. That is particularly true with electronic evidence." *United States v. Flores*, 802

F.3d 1028, 1043 (9th Cir. 2015) (citation and quotation marks omitted). The Ninth Circuit has

stated:

> One may properly infer that equipment acquired to accomplish the
> crime and records of the criminal activity will be kept for some
> period of time. When the evidence sought is of an ongoing
> criminal business of a necessarily long-term nature . . . rather than
> that of a completed act, greater lapses of time are permitted if the
> evidence in the affidavit shows the probable existence of the
> activity at an earlier time.

*United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (citations omitted).

Cramer cites Paragraphs 32 and 33 of the affidavit to claim that the information

supporting probable cause is stale. The Court finds that the affidavit described an alleged

ongoing effort by Cramer from 2007 until his arrest to evade the payment of his taxes, file false

tax returns, and defraud the IRS. SA Kelley's affidavit set forth Cramer's efforts to evade and

conceal income and assets from the IRS as background. SA Kelley's affidavit also stated that:

> From my training and experience, I know that persons engaged in tax schemes, conspiracies to defraud the U.S., evasion of income tax, and the filing of false returns frequently retain records of their correspondence and transactions within their residence and other places under their control. These records may be in the form of written communications, emails, receipts, negotiated instruments, contracts, bank statements, tax returns, and other records. Records of this kind are often also stored on computer media or in email and online storage.

(Exhibit 3B ¶ 76). The affidavit was sufficient to establish probable cause that there would be evidence of tax evasion in the items to be searched.

### 3. Vague and Conclusory Language

Cramer argues that the affidavit contains vague and conclusory language, namely SA Kelley's use of the word "often" when, for example, SA Kelley states that "persons engaged in tax schemes, conspiracies to defraud the U.S., evasion of income tax, and the filing of false returns often maintain records for a long periods of time." ECF 168. "[The] opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation under the *Gates* totality of the circumstances approach." *Michaelian*, 803 F.2d at 1045. The Court finds that these statements are neither vague nor conclusory.

### 4. The 120-day Period in the Warrant

Cramer argues that the government did not comply with the 120-day period set forth in the warrant, which required that the examination of the Devices be performed in a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. Cramer's sole argument, however, is that the devices in question were not *returned* to Cramer until June 19, 2018, when the 120-day deadline was April 21, 2018. As set forth in the declaration of SA Diana J. Erwin, SA Erwin completed the 120-day deadline review on January 17, 2018, and the 180-day deadline review on March 25, 2018. ECF 170-1. The Court finds that SA Erwin complied with the deadlines and timeframes required by the warrant.

**D. Motion to Suppress Evidence and Motion to Dismiss for Due Process Violations (Search Warrant for Electronic Mail December 2014 (ECF 143)**

Defendant Cramer moves to suppress the evidence seized from his email account of garyncramer@gmail.com. Cramer argues that there was no probable cause to search that email account, that the government already had Cramer's emails and therefore that the warrant was duplicative, that the warrant is overbroad and lacks particularity, that the affidavit information was stale, and that the language in the affidavit was vague and conclusory. He also contends that his due process rights were violated by the IRS's delay in the investigation and that as a result the indictment should be dismissed.

**1. Probable Cause**

As part of the Cramer investigation, SA Slafsky reviewed records seized from a search warrant of the email account tjmarrs@gmail.com. Cramer communicated with Marrs through his email account, garyncramer@gmail.com. These email accounts revealed that between March 2013 and April 2014, Marrs provided advice to Cramer about topics such as reporting taxable income, replacing Forms 1099 with "corrected"1099s, filing "zero income" tax returns, explaining how Cramer should respond to the IRS about payment of his outstanding 2001 tax liability; and suggesting edits to correspondence that Cramer would be sending to the IRS about his "zero income" tax returns. ECF 168-2. Cramer also used his email account garyncframer@gmail.com to send information about his business Foundation Management Services, Inc. to an IRS undercover agent. ECF 168-2. Based on the information described in the affidavit, there was a fair probability that evidence of tax evasion and other crimes would be found in Cramer's email account. *Kelley*, 482 F.3d at 1050.

## 2.  Overbreadth and Particularity

SA Slafsky's affidavit set forth probable cause that evidence of violations of 26 U.S.C.

§ 7201 (tax evasion), 26 U.S.C. § 7206(1) (filing false tax returns); 26 U.S.C. § 7212

(interference with administration of tax laws); and 18 U.S.C. § 371 (conspiracy to defraud the

United States) would be found in the email account of garyncramer@gmail.com. The affidavit

describes the following items: the applicable law, the fact that Cramer purchased a trust from two

individuals who had been convicted of tax crimes and conspiracy to defraud the United States

sometimes by promoting abusive trusts, Cramer's efforts to thwart the IRS's collection of his

outstanding tax liability, Cramer's attempt in May 2007 to pay his outstanding tax liability with a

fraudulent check, Cramer's filing of false "zero income" tax returns in 2014, Cramer's email

discussions in 2013 and 2014 with codefendant Marrs about filing "zero income" tax returns and

other tax protestor correspondence with the IRS, and Cramer's use of his email account

garyncramer@gmail.com to send information to an IRS undercover agent. The statutes are

specifically listed in the affidavit. The scope of the warrant was limited to the probable cause that

SA Slafsky set forth in his affidavit for the enumerated crimes of Tax Evasion, (26 U.S.C.

§ 7201), Filing False Tax Returns (26 U.S.C. § 7206(1); Interference with the Administration of

Tax Laws (26 U.S.C. § 7212); and Conspiracy to Defraud the United States (18 U.S.C. § 371).

The warrant permitted agents to seize emails, messages, records or files that constitute

evidence or that were used to facilitate the crimes of tax evasion, filing false tax returns,

obstructing the administration of the Internal Revenue laws, and conspiracy to defraud the

United States. The Court finds that this warrant was neither overbroad nor lacking in

particularity. The warrant also made clear to the executing officer exactly what she was allowed

to search for and seize. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d at 857.

### 3. Vague and Conclusory Language

Cramer contends that the agent improperly used vague and conclusory language when he included the phrase "based on my training and experience" and the term "often" when drafting certain paragraphs of the affidavit. The Court rejects this argument for the same reasons described in discussion section (A)(4) of this Order, *supra*.

### 4. Due Process Claim

Cramer contends that his due process rights were violated by the IRS's delay in the investigation, and that as a result, the indictment should be dismissed. The Court rejects this argument for the same reasons described in discussion section (A)(5) of this Order, *supra*.

## E. Motion to Exclude Illegally Gathered Evidence
### (ECF 153 in Case '267; ECF 87 in Case '271)

Defendant Marrs moves to exclude from trial the following: all evidence gathered from the email accounts of Marrs, all evidence gathered from the home of Marrs, all other evidence gathered from other allegedly illegal searches and seizures including banking and financial records, and all evidence stemming from those searches and seizures. Marrs argues this evidence should be excluded because the affidavits offered in support of the warrants failed to allege Marrs' intent and knowledge, which are elements of the offenses set forth in the applications for the warrants.

Marrs cites no case law in support of his argument. As noted above, an affidavit establishes probable cause when there is a "fair probability that contraband or evidence is located in a particular place." *Kelley*, 482 F.3d at 1050 (citation and quotation marks omitted). A "fair probability" is dependent upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question.'" *Id.* (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). Neither certainty nor a preponderance of the evidence is

required. *Id.* The reviewing court must decide whether there is a "fair probability" that, based upon the facts set forth in the affidavit and reasonable inferences from them, the search location would contain evidence of a crime. *See Gourde*, 440 F.3d at 1066 (observing that the Fourth Amendment requires "no more" than this).

SA Kelley's lengthy and detailed affidavits for both locations set out sufficient probable cause that evidence of the listed crimes would be found in Marrs' email account and at his residence. The affidavits state that over a lengthy period Marrs was involved in several businesses that offered debt elimination services, multilevel marketing schemes, and tax advice. Marrs created and used nominee entities, including trusts, to conceal and attempt to conceal income and assets from the IRS. Marrs owned and operated a website called livingfreeandclear.com, through which he promoted and sold abusive tax avoidance schemes. At the time of the investigation, Marrs was selling membership in the group discussions on his website starting at $49.00 per month and running up to $1,497 annually. Marrs also had videos available on YouTube, where he promoted a wealth plan that included advice about debt elimination, asset protection, and "zero income" tax plans. The "zero income" tax plan referenced a concept called "Cracking the Code," a method to get back the past three years of income tax paid to the IRS.

The affidavits set forth more than enough probable cause for the magistrate judge to find probable cause that evidence of tax evasion, filing false tax returns, obstruction of the administration of the Internal Revenue laws, and conspiracy to defraud the Internal Revenue Service would be found in Marrs' emails and at his residence. Nothing more is required. Marrs' motions to suppress filed in both cases are denied.

# CONCLUSION

In Case '267, the Court DENIES the following motions filed by Defendants Cramer and Marrs: (1) Motion to Suppress Evidence and Motion to Dismiss for Due Process Violations (Search Warrant for Eugene Residence) (ECF 136); (2) Motion to Suppress Evidence (Arrest on December 8, 2017) (ECF 141); (3) Motion to Suppress Evidence (Search Warrant December 22, 2017) (ECF 142); (4) Motion to Suppress Evidence and Motion to Dismiss for Due Process Violations (Search Warrant for Electronic Mail December 2014 (ECF 143); and (5) Motion to Exclude Illegally Gathered Evidence (ECF 153). In Case '271, the Court DENIES the Motion to Exclude Illegally Gathered Evidence (ECF 87) filed by Defendant Marrs.

**IT IS SO ORDERED.**

DATED this 5th day of March, 2019.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge